UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BEN THOMAS,

      Plaintiff,

v.                                                     Case No. 5:13cv402/CJK

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant.

_____/

## MEMORANDUM ORDER

This case is now before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Ben Thomas' application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and FEDERAL RULE OF CIVIL PROCEDURE 73 for all proceedings in this case, including entry of final judgment. Upon review of the record before this court, I conclude that the findings of fact and determinations of the Commissioner are supported by substantial evidence. The decision of the Commissioner, therefore, should be affirmed and the application for benefits denied.

## ISSUES ON REVIEW

Mr. Thomas, who will be referred to as claimant, plaintiff, or by name, raises three issues. He claims (1) the ALJ failed to give great weight to the opinions of Mr. Thomas' treating physicians, Dr. James Clemmons and Dr. Raymond Bleday; (2) the

ALJ failed to properly apply the pain standard; and (3) the ALJ failed to properly assess Mr. Thomas' mental residual functional capacity as required by SSRs 96-8p and 85-15.  (Doc. 14, p. 6).

<u>PROCEDURAL HISTORY</u>

On February 26, 2010, Mr. Wells filed an application for SSI, alleging disability beginning on May 8, 2009.  T. 74, 139-142.[1]  The application was denied initially, T. 74, and upon reconsideration.  T. 75.  Plaintiff appeared before the ALJ for a hearing on December 21, 2011.  T. 31.  On June 15, 2012, the ALJ issued a decision denying claimant's application for SSI.  T. 14-23.  The Appeals Council denied claimant's request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner.  T. 1-3.

<u>FINDINGS OF THE ALJ</u>

In her written decision, the ALJ made a number of findings relevant to the issues raised in this appeal:

• Claimant has not engaged in substantial gainful activity since February 26, 2010, the application date.  T. 16

• Claimant has the following severe impairments: internal derangement left knee; degenerative disc disease of the spine; low back pain and cervicalgia.  T. 16.

• Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR

---

[1] The administrative record, as filed by the Commissioner, consists of eight volumes (docs. 12-2 through 12-9), and has 519 consecutively numbered pages.  References to the record will be by "T.," for transcript, followed by the page number.

Part 404, Subpart P, Appendix 1.  T. 17.

 • Claimant has the residual functional capacity to perform light work as defined in 20 CFR § 416.967(b) except claimant is limited to work that only requires him to occasionally climb ladders, ropes, scaffolds, ramps, and stairs, and to occasionally balance, stoop, kneel, crouch, and crawl.  T. 17.

 • Claimant has no past relevant work.  T. 21.

 • Claimant was born on October 6, 1965 and was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed.  T. 21.

 • Claimant has at least a high school education and is able to communicate in English.  T. 22.

 • Transferability of job skills is not an issue because claimant does not have past relevant work.  T. 22.

 • Considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform.  T. 22.

 • Claimant has not been under a disability, as defined in the Social Security Act, since February 26, 2010, the date the application was filed.  T. 23.

<u>STANDARD OF REVIEW</u>

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the ALJ applied the correct legal standards.  *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced

that it is not supported by substantial evidence or that proper legal standards were not applied.").  Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). With reference to other standards of review, the Eleventh Circuit has said that "'[s]ubstantial evidence is more than a scintilla . . . .'" *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (*quoting Lewis*, 125 F.3d at 1439). Although the ALJ's decision need not be supported by a preponderance of the evidence, therefore, "it cannot stand with a 'mere scintilla' of support." *See Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner] . . . .'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  A reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record."  *See Flynn v. Heckler*, 768 F.2d. 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785

(M.D. Fla. Feb. 28, 2011).[2]

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 416.920(a)(4), the Commissioner analyzes a disability claim in five steps:

1.   If the claimant is performing substantial gainful activity, he is not disabled.

2.   If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.   If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

---

[2] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

4.     If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.[3]

5.     Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

Step five (or step four in cases where the ALJ decides a claimant can perform her past work) is where the rubber meets the road.  At that point, the ALJ formulates the all-important residual functional capacity.   The ALJ establishes residual functional capacity, utilizing the impairments identified at step two, by interpretation of (1) the medical evidence, and (2) the claimant's subjective complaints (generally complaints of pain).  Residual functional capacity is then used by the ALJ to make the ultimate vocational determination required by step five.[4]  "[R]esidual functional capacity is the most [claimant] can still do despite [claimant's] limitations."[5]  20 CFR

---

[3] Claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  *See Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).

[4] "Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.)  We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."  20 C.F.R. § 416.920(a)(4).

[5] In addition to this rather terse definition of residual functional capacity, the Regulations describe how the Commissioner makes the assessment:

(3) Evidence we use to assess your residual functional capacity.  We will assess your residual functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity.  (See § 416.912(c).)  However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get

§ 416.945(a)(1).  Often both the medical evidence and the accuracy of a claimant's subjective complaints are subject to a degree of conflict, and that conflict leads, as in this case, to the points raised on judicial review by the disappointed claimant.

### FACT BACKGROUND AND MEDICAL HISTORY[6]

At the hearing before the ALJ, claimant offered testimony as to his health and daily activities.  Mr. Thomas completed high school and went to college for seven months, maintaining a 3.0 GPA.  T. 40.  He stopped attending college to help care for his father, who suffered from cancer.  T. 40-41.  Claimant believes he became disabled after a car accident in May 2009.  T. 42.  The accident caused back pain and sleep issues.  T. 42.  Following the accident, claimant received treatment from Dr. Bontrager, a chiropractor, and Dr. Bleday.  T. 43.  Treatment consisted of injections and pain medication.  T. 43.  Claimant's neck and back issues prevent him from lifting more than five pounds without "a lot of pain."  T. 43.  His left side is numb from his arm to his thigh.  T. 44.  He also has pain in his knees.  T. 44.  Claimant no longer drives because it causes pain in his back and neck.  T. 37.  He uses a cane due

---

medical reports from your own medical sources.  (See §§ 416.912(d) through (f).) We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. (See § 416.913.)  We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.  (See paragraph (e) of this section and § 416.929.)[.]

20 C.F.R. § 416.945(a)(3).

[6] The recitation of medical and historical facts of this case, as set out below, is based on the court's independent review of the record.  Although intended to be thorough and to provide an overview of the claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as necessary in the Analysis section.

to problems with his foot and knee, and numbness in his left leg and lower back.  T. 37.

In March 2010, Mr. Thomas suffered a gunshot wound to his left leg.  T. 37-38. This injury occurred during a transaction that resulted in claimant being charged with burglary (of a friend's home) and jailed from March to August of 2010.  T. 38, 46. Mr. Thomas has not tried to work since his release from custody because he does not think anyone will hire him.  T. 46-47.  He believes his pain is disabling.  T. 47.  He must stand up after 20 minutes of sitting due to pain.  T. 47.  After walking twenty-five feet, his back tightens up.  T. 47.  He takes Tramadol and Flexeril for pain relief.  T. 47.  Before October 2011, he took Lortab for pain.  T. 50.  Claimant lives with his girlfriend and goes shopping once a month.  T. 47, 49.  Pain would prevent him from performing a job that allowed alternating between sitting and standing every 25 to 30 minutes.  T. 57.  Plaintiff lays in bed for five to six hours a day, four times a week. T. 57.  Despite taking medication, his pain rates at a 7 or 7.5.  T. 58.  On bad days, the pain rates as a 9 or 10.  T. 63.  Pain in his leg makes sleeping difficult.  T. 60-61.  His back pain is so severe it puts him in the fetal position for 35 to 40 minutes, two or three times per week.  T. 63.  Since the car accident, his back and neck pain have gotten worse.  T. 65.

Medical records also appear in the evidence before the Commissioner.  On May 8, 2009, following a car accident, plaintiff presented to the emergency room with a hematoma on his left arm.  T. 279.  He had decreased range of motion in the left arm and complained of neck, arm, and back pain.  T. 279.  He underwent a series of tests to determine the severity of his injuries.  An x-ray of plaintiff's left arm revealed "soft tissue swelling at the proximal posteromedial aspect of the forearm," but no fracture

or dislocation was detected.  T. 273.  Similarly, no acute fracture or dislocation of the hand was detected, but a contusion or sprain was possible.  T. 274.  A CT scan of the cervical spine revealed "the cervical lordosis is reversed, but no fracture or luxation is detected."  T. 275.  The vertebral body heights were maintained, as were the intervertebral disc heights.  T. 275.  "Hypertrophic changes [were] felt to be mild."  T. 275.  Likewise, an x-ray showed the cervical lordosis was straightened but no fracture or luxation was present.  T. 276.  A CT scan of the lumbar spine revealed "no evidence of acute injury or active disease."  T. 278.  The radiologist noted "there may be minimal retrolisthesis at L5-S1," but it was "most likely developmental."  T. 278.  An x-ray of the left elbow showed a "slight irregularity of the radial head," but "no definite fracture" was identified.  T. 277.  Plaintiff received pain medication and was directed to follow up with his doctor. T. 281.

Mr. Thomas sought follow-up treatment from chiropractor Daniel Bontrager. Claimant presented to Dr. Bontrager with " low back pain that radiated to the left knee with numbness and tingling in the left thigh, . . . neck pain that radiated to the shoulders, . . . headaches with blurred vision, . . . thoracic and chest pain, . . . [and] left upper extremity pain including the elbow and hand."  T. 287.  Dr. Bontrager viewed Mr. Thomas' prognosis as good.   T. 288.   The chiropractic treatment consisted of spinal manipulation, interferential muscle stimulation, hydrocollator packs, intersegmental traction, hydrotherapy, and therapeutic exercise.  T. 286, 288. On July 1, 2009, claimant reported "major improvement of neck pain, headaches, and low back pain."  T. 285.  His most persistent symptom was pain in his left hand and thumb which increased when he tried to grip or carry anything of significant weight. T. 285.  Dr. Bontrager thought plaintiff had reached maximum medical improvement

from the May 8, 2009 car accident.  T. 286.  Claimant reported performing most activities of daily living, but with increased pain.  T. 285.  Mr. Thomas planned to return to work at the Atlanta Braves baseball stadium performing general labor and custodial duties.  T. 286.  Dr. Bontrager indicated claimant would experience increased pain in the cervical and lumbar region with repetitive bending, stooping, and lifting.  T. 286.  The doctor further indicated claimant would experience discomfort and moderate pain in his left arm and hand with repetitive use.  T. 286.  Plaintiff was released from Dr. Bontrager's care with a "3% permanent impairment rating to the body as a whole."  T. 286.

On August 19, 2009, claimant presented to the emergency room of Northwest Florida Community Hospital with complaints of back pain.  T. 290-294.  An examination noted a negative straight leg raise test and that plaintiff moved around with no difficulty.  T. 290.

On March 19, 2010, Mr. Thomas sought treatment at the emergency room of Jackson Hospital for the gunshot wound previously mentioned.  T. 304-306.  After the shot (which he described as having been administered "by a friend"), plaintiff ran from the shooter.  T. 312.  During the hasty retreat, he fell three or four times and injured his left knee.  T. 312.  X-rays revealed "comminuted fractures of the second and third metatarsals."  T. 318.  Plaintiff, under escort by Jackson County deputies, saw Raymond Bleday, M.D., for follow-up appointments on March 24 and March 29, 2010.  T. 314, 341.  He reported his left knee was sore but the pain was tolerable.  T. 312.  The falls exacerbated his low back pain but he reported no neck pain.  T. 312.  Plaintiff was taking Lortab for his pain.  T. 312.  On March 30, 2010, Dr. Bleday surgically treated the gunshot wound.  T. 315.  He removed a small piece of bone

from the foot, cleaned the wound, then closed it with staples.  T. 315.  An x-ray taken on the day of the operation showed the fragments of the second and third metatarsals were in "relatively good alignment[.]"  T. 336.  On April 1, 2010, Dr. Bleday noted the bullet entry and exit wounds in the left foot were healed, but claimant reported left knee and lower back pain.  T. 329.  Claimant continued to complain of pain in his left knee and lower back on April 15, 2010, and also indicated he was experiencing neck pain.  T. 327.  The low back and neck pain was tolerable, but the knee pain was constant and not alleviated by pain medication.  T. 327. Dr. Bleday noted signs were positive for a medial meniscal tear in the left knee and ordered an MRI.  T. 327.  The MRI, performed on April 23, 2010, revealed a "partial tear of medial collateral ligament largely involving the mid to proximal fibers."   T. 353.  "There [was] suggestion of injury to the most posterior fibers of the medial retinaculum[.]"  T. 353.

Dr. Bleday completed a Treating Source Orthopedic Questionnaire on May 13, 2010.  T. 387-388.  In that document, Dr. Bleday indicated plaintiff would experience symptoms of gait disturbance; chronic pain; and limited range of motion of the lumbar spine.  T. 388.  Claimant's grip strength was rated as "5/5" and lower extremity strength was "4/5."  T. 388.  Dr. Bleday said a hand-held assistive device was not medically necessary for independent ambulation, but plaintiff was not "capable of performing fine/gross manipulations on a sustained basis."  T. 388.  The doctor cited claimant's left foot fractures, neck pain, and back pain as support for his conclusion that claimant was incapable of fine or gross manipulations.  T. 388.

Plaintiff presented to the emergency room with complaints of neck and back pain on November 18, 2010.  T. 409.  He received prescriptions for Flexeril and Naproxen.  T. 411.  He was instructed to apply heat to his back four times a day, and

follow up with a doctor.  T. 411.

On June 1, 2011, an MRI of plaintiff's lumbar spine revealed: "the vertebral heights and disk spaces are maintained; . . . slight desiccation of the disk at L5-S1; . . . straightening of the normal lumbar curvature; . . . slight degree of inflammation along the facet joints at L3-4, L4-5, L5-S1; . . .no central canal stenosis."  T. 514. The interpreting doctor concluded there was "(1) very minimal lumbar spondylosis; (2) multilevel facet joint arthropathy; (3) annular bulging of the disk and foraminal encroachment noted bilaterally at L4-5 and L-5-S1; and (4) no central canal stenosis or discrete disk fragments identified."  T. 514-515.

Plaintiff visited James Clemmons, M.D., of Alford Community Health, on several occasions in 2011 with complaints of back and neck pain.  T. 482, 484, 486-488.  On August 6, 2011, Dr. Clemmons completed a Clinical Assessment of Pain form and a Physical Capacities Evaluation, each provided by counsel.  T. 424-425. Utilizing phrases provided on a preprinted check-off form, Dr. Clemmons indicated claimant's pain was "present to such an extent as to be distracting to adequate performance of daily activities or work;" physical activity will increase claimant's "pain to such an extent that bed rest and/or medication is necessary;" and side effects of prescribed medication "can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc." T. 424.  Dr. Clemmons further indicated, here in his own handwriting, claimant would need to spend four to five hours a day in bed.  T. 424.  On the Physical Capacities Evaluation, Dr. Clemmons circled the space indicating claimant was limited to lifting and/or carrying five pounds occasionally and one pound frequently; he could sit for five hours and stand or walk for two hours in an eight-hour work day; he could never climb stairs or ladders and

never perform bending and/or stooping movements; he could rarely work with or around hazardous machinery; he could occasionally reach (including overhead), perform work with environmental problems, and operate a motor vehicle; and frequently push or pull and perform gross/fine manipulation.  T. 425.  Dr. Clemmons thought claimant would need an assistive device to ambulate and he would be absent from work ten to twelve days a month.  T. 425.

On January 25, 2012, E. Jacob, M.D., performed a physical evaluation of Mr. Thomas for the Social Security Administration.  T. 497-499.  Examination of claimant's spine revealed he was able to stand up and bend his lumbar area and "obliterate lumbar lordosis" when "trying to remove his socks from his feet." T. 498. The muscles in the paravertebral and lumbar area were supple, but claimant reported tenderness on the left sacroiliac joint.  T. 498.  Dr. Jacob noted plaintiff was able to stand on each leg to remove the socks from the opposite foot.  T. 498-499.  Dr. Jacob offered opinions as to Mr. Thomas' functional limitations on a Social Security Administration Medical Source Statement of Ability to do Work-Related Activities (Physical), combining check-off answers with some handwritten remarks.  T. 501-506.

## ANALYSIS

Mr. Thomas raises three issues.  He claims (1) the ALJ failed to give great weight to the opinions of Mr. Thomas's treating physicians, Dr. James Clemmons and Dr. Raymond Bleday; (2) the ALJ failed to properly apply the pain standard; and (3) the ALJ failed to properly assess Mr. Thomas' mental residual functional capacity as required by SSRs 96-8p and 85-15.  (Doc. 14, p. 6).

<u>Treating Physicians</u>

Claimant first asserts the ALJ erred by discounting the opinions of his treating physicians, Dr. Clemmons and Dr. Bleday.  (Doc. 14, p. 6-14).  Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  "Good cause" exists when:  (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 416.927(c)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and

(6) other factors which tend to support or contradict the opinion.   20 C.F.R. § 416.927(c)(2).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 357 F.3d at 1241.   Failure to do so is reversible error.  *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[7] *see also Nyberg v. Commissioner of Social Security*, 179 Fed. App'x 589, 591 (11th Cir. 2006).

The ALJ gave little weight to Dr. Clemmons' opinion because it was "not supported by the overall evidence of record or his own treatment records, and is apparently based on only three examinations over an approximate 20 month period."[8] T. 20.  The ALJ's decision to give little weight to the opinion of Dr. Clemmons is supported by substantial evidence.  As noted by the ALJ, Dr. Clemmons' treatment notes do not support the opinions he offers on the Clinical Assessment of Pain and Physical Capacities Evaluation forms.  Dr. Clemmons' treatment notes are fairly unremarkable.  T. 482, 484, 486-488.  Although claimant complained of neck and back pain, Dr. Clemmons' notes indicate an examination of claimant's neck and back was normal.  T. 484.  Moreover, some of Dr. Clemmons' notes suggest he did not have detailed knowledge of Mr. Thomas' medical condition.  For example, on August

---

[7] *MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

[8] Plaintiff asserts Dr. Clemmons actually treated him on four separate occasions.  (Doc. 14, p. 11).  Although some of the treatment notes are undated, the record before the court indicates Dr. Clemmons did treat plaintiff on at least four occasions.  T. 482-489.  That the ALJ believed Dr. Clemmons treated plaintiff on only three occasions does not undermine his conclusion that Dr. Clemmons' opinion was entitled to little weight.

6, 2011–the day Dr. Clemmons completed the pain questionnaire and Physical Capacities Evaluation–the treatment note states, "don't know what MRI in '09 shows" and "had what sounds like epidural one time."  T. 482.  These statements suggest Dr. Clemmons did not have an in-depth knowledge of claimant's medical history.

The ALJ gave no weight to Dr. Bleday's opinion that "claimant was incapable of fine and gross manipulations on a sustained basis due to neck and low back pain, and left foot fracture," because it was "not supported by the evidence."  T. 19.  The ALJ, however, gave "significant weight to Dr. Bleday's opinion that the claimant can independently ambulate because it is consistent with the overall evidence of record."  T. 19.  Claimant contends "the ALJ is not entitled to pick some restrictions while rejecting others without explaining her reasoning with reference to the factors governing the evaluation of medical-source opinions set out in 20 C.F.R. §§ 404.1527(d)-(f) and 416.927(d)-(f)."  (Doc. 14, p. 14).  Here, the ALJ noted the portion of Dr. Bleday's opinion concerning claimant's manipulative limitations was "not supported by the evidence."  T. 19.  Dr. Bleday cited claimant's neck and low back pain, and the fractures in claimant's left foot as support for the conclusion claimant was incapable of fine/gross manipulations on a sustained basis with both the upper and lower extremities.  T. 388.  When Dr. Bleday was asked to identify the symptoms related to claimant's orthopedic impairment on the same page of the questionnaire, however, he did not check off the boxes for "decreased ability to perform fine manipulation" or "decreased ability to perform gross manipulation."  T. 388.  The doctor also indicated claimant's grip strength was "5/5" and lower extremity strength was "4/5."  T. 388.  The internal inconsistency in Dr. Bleday's opinion supports the ALJ's decision to afford the portion of it concerning fine and gross manipulation little weight.  Moreover, the objective medical evidence does not

support this opinion.  X-rays of claimant's left arm following his car accident in 2009 revealed no fractures or dislocations.  T. 273, 274, 277.  X-rays, CT scans, and an MRI of plaintiff's spine showed minimal problems.  T. 275-276, 278, 514-515. Claimant reported "no pain or problems regarding the left foot" on his final visit to Dr. Bleday.  T. 327.  Although claimant reported severe and constant pain in his left knee, his neck and back pain were reported as "tolerable."  T. 327.  "No right or left upper extremity, left lower extremity, right or left hip pain[]" was noted.[9]  T. 327. These treatment notes do not support Dr. Bleday's conclusion, offered one month later, that Mr. Thomas was incapable of performing fine or gross manipulations on a sustained basis due to neck and low back pain and left foot fractures.  Thus, substantial evidence supported the ALJ's decision to afford that portion of Dr. Bleday's opinion no weight.

Additionally, both Dr. Clemmons' and Dr. Bleday's opinions appeared on pre-printed check-off forms.  The law concerning conclusory statements is particularly applied where a doctor, even one who has treated the claimant, expresses opinions on a preprinted or "check-off" form.   Such opinion evidence will not bind the Commissioner.  Indeed, courts have found that such preprinted forms do not provide persuasive evidence of the validity of the opinions expressed therein.  *See Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("Check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions." (*citing Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th

---

[9] Considering the treatment note recounts claimant's complaint of constant pain in his left knee, T. 327, the undersigned assumes Dr. Bleday intended to indicate there was no pain in the right lower extremity.

Cir. 1985);  *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993))).  Although such forms are admissible, "they are entitled to little weight and do not constitute 'substantial evidence' on the record as a whole."  *O'Leary v. Schweiker*, 710 F. 2d 1334, 1341 (8th Cir. 1983).  Based on the conclusory nature of the treating physicians' opinions and their lack of support in the record, the ALJ's decision to afford the opinions little weight is supported by substantial evidence.

Pain Standard

Next, plaintiff's asserts the ALJ failed to properly apply the pain standard. (Doc. 14, p. 15-19).

> In order to show a disability based on subjective pain testimony, "the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise" to the claimed symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Under Social Security regulations, the ALJ follows a two-step analysis in considering a claimant's complaints: first, determining whether there is an underlying medically determinable impairment that could reasonably be expected to cause the claimant's pain or other symptoms; and second, once a claimant has established an impairment that could reasonably produce her symptoms, the ALJ evaluates the intensity and persistence of the symptoms and their effect on the claimant's work. 20 C.F.R. § 416.929(a), (c).

*Powell v. Comm'r of Soc. Sec.,* 571 F. App'x 914, 916 (11th Cir. 2014).  While both the regulations and the Eleventh Circuit standard "require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself."  *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir.1991).  The Eleventh Circuit has held that "pain alone can be

disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)).  However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered.  *Marbury*, 957 at 839-840;  *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

If the ALJ refuses to credit plaintiff's subjective testimony concerning pain, the ALJ must do so explicitly and give reasons for that decision.  *MacGregor v. Bowen*, 786 F.2d at 1054.  Where the ALJ fails to do so, the Eleventh Circuit has stated it would hold as a matter of law that the testimony is accepted as true.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *MacGregor*, 786 F.2d at 1054.  Although the Eleventh Circuit "does not require an explicit finding as to credibility, the implication must be obvious to the reviewing court."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted).  "The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude the ALJ considered the claimant's medical condition as a whole."  *Id.* (citation and internal quotations omitted).  And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence.  *Wilson*, 284 F.3d at 1225-1226; *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1259 (M.D. Fla. 2005).

Mr. Thomas asserts he satisfies the Eleventh Circuit's pain standard because he has an underlying medical condition that could reasonably be expected to produce his pain.  (Doc. 14, p. 19).  He argues the ALJ's failure to properly apply the pain standard should result in a reversal of the Commissioner's decision and the entry of a finding of disability.  (*Id.*).  Contrary to plaintiff's assertion, the ALJ's

consideration of plaintiff's subjective complaints of pain was proper.  The ALJ found claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  T. 18.  The ALJ found, however, claimant's subjective complaint's of pain were not credible.  That finding is supported by substantial evidence.  The ALJ stated claimant's complaints of disabling neck and back pain were undermined by "relatively normal" CT scans.  T. 18.  The ALJ noted plaintiff told Dr. Bleday his back and neck pain were tolerable.  T. 19.  Finally, the ALJ noted "[t]he discrepancies between Dr. Jacob's observations of the claimant's functional capabilities and his examination findings detract from the claimant's overall credibility."  T. 20.  Dr. Jacob observed Mr. Thomas was able to stand up on his left leg and remove the shoes and socks from his right foot despite claiming he was unable to stand on his left leg.  T. 497-498.  Similarly, claimant was able to "bend his lumbar area and obliterate lumbar lordosis" when removing the socks from his feet.  T. 498.  Dr. Jacob opined Mr. Thomas' "functional level is better than the physical examination" indicated.  T. 499.  The doctor noted the "straight leg raising test was 15-20 degrees on the left and 20-30 degrees on the right, however, the patient was able to sit up on the examining table with the knee fully extended and the hip fully flexed showing that the patient's actual straight leg raising is 90 degrees."  T. 499.  Similarly, the "range of neck movements during observation is better than what [was] demonstrated during examination."  T. 499.  Dr. Jacobs also noted objective evidence did not support claimant's subjective reports of pain and "[f]unctionally [he is] able to do more than what [he] says he can."  T. 501.  Essentially, Dr. Jacob found claimant was exaggerating the severity of his condition.  The lack of objective evidence supporting claimant's disabling complaints of pain along with Dr. Jacob's clinical observations provide substantial evidence to support the ALJ's credibility

determination.

Mental Residual Functional Capacity Formulation

Mr. Thomas' third and final contention–that the ALJ failed to properly assess claimant's mental residual functional capacity as required by SSRs 96-8p and 85-15–is also unpersuasive.  (Doc. 14, p. 19-21).  Claimant asserts the ALJ "did not evaluate or even discuss Mr. Thomas's ability to understand, carry out, and remember simple instructions; use judgment in making work-related decisions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting." (*Id.*, p. 21).  Claimant further asserts the ALJ "failed to express Mr. Thomas's pain 'in terms of work-related functions.'" (*Id.*).  In support of this argument, Mr. Thomas cites Dr. Clemmons' opinion, which indicated–via agreement with a check-off form–that pain "is present to such an extent as to be distracting to adequate performance of daily activities or work[,]" physical activity "[i]ncrease[s] [his] pain to such an extent that bed rest and/or medication is necessary[,]" and side effects from medication "can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc." T. 424.  As discussed above, however, the ALJ's decision to afford little weight to Dr. Clemmons' opinion is supported by substantial evidence.  No other doctor indicated Mr. Thomas suffered from mental limitations.  The ALJ also offered adequate support for discrediting plaintiff's subjective complaints of pain.  As the ALJ noted in the decision, "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." T. 18.  Thus, the ALJ determined claimant's pain did not result in mental limitations that would affect his residual functional capacity; that determination is supported by substantial evidence.

## CONCLUSION

In sum, the ALJ's weighting of the medical opinions and credibility determination were supported by substantial evidence.  The ALJ also properly evaluated claimant's mental residual functional capacity.

Accordingly, it is ORDERED:

1.     The decision of the Commissioner is AFFIRMED and plaintiff's application for Supplemental Security Income is DENIED.

2.     The clerk is directed to close the file.

DONE AND ORDERED this 5th day of March, 2015.


*/s/ Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**